FILED
2024 Mar-07  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| **ALLISON PREVATTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 6:23-cv-00121-AMM** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **Commissioner,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF DECISION

Plaintiff Allison Prevatte brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.      Introduction

On January 26, 2021, Ms. Prevatte protectively filed an application for benefits under Title II of the Act, alleging disability as of April 2, 2018. R. 19, 53–56. Ms. Prevatte alleges disability due to tibial neuropathy, lumbosacral radiculopathy, spinal enthesopathy, lumbosacral radiculitis, lumbosacral spondylosis with myelopathy, rods in her spine, her arms and legs falling asleep

continuously, her legs giving way, shaking in her legs and arms, and neck pain. R. 53. She has at least a high school education and past relevant work experience as a sales supervisor. R. 25.

The Social Security Administration ("SSA") initially denied Ms. Prevatte's application on May 10, 2021, and again upon reconsideration in July 2021. R. 19, 53–56, 58–62, On August 18, 2021, Ms. Prevatte filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 19, 85–86. That request was granted. R. 101–03. Ms. Prevatte received a telephone hearing before ALJ Sheila E. McDonald on March 8, 2022. R. 19, 31–50. On April 8, 2022, ALJ McDonald issued a decision, finding that Ms. Prevatte was not disabled from April 2, 2018 through her date of last insured, March 31, 2019. R. 16–27. Ms. Prevatte was twenty-six years old at the time of the ALJ decision. R. 25.

Ms. Prevatte appealed to the Appeals Council, which denied her request for review on November 30, 2022. R. 1–3. After the Appeals Council denied Ms. Prevatte's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On January 30, 2023, Ms. Prevatte sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging

in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id. Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20

C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Prevatte would meet the insured status requirements of the Act through March 31, 2019. R. 19, 21. Next, the ALJ found that Ms. Prevatte "did not engage in substantial gainful activity during the period from her alleged onset date of April 2, 2018, through her date last insured of March 31, 2019." R. 21. The ALJ decided that Ms. Prevatte had the following severe impairment: congenital disorder of the lumbar spine. R. 21. Overall, the ALJ determined that Ms. Prevatte "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 21.

The ALJ found that Ms. Prevatte "had the residual functional capacity to perform sedentary work" with certain limitations. R. 22. The ALJ determined that Ms. Prevatte could occasionally "operate foot controls with her bilateral lower extremities" or be exposed "to extremes of cold as well as full body vibration." R. 22. The ALJ determined that Ms. Prevatte "should never climb ladders, ropes[,] or scaffolds," or be exposed "to hazards such as unprotected heights and hazardous machinery." R. 22.

The ALJ determined that Ms. Prevatte's past relevant work was that of a sales supervisor. R. 25. Based on the testimony of the vocational expert, the ALJ determined Ms. Prevatte "was able to perform past relevant work as generally performed." R. 25. Alternatively, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy that [Ms. Prevatte] also can perform." R. 25.

According to the ALJ, Ms. Prevatte is "a younger individual" and "has at least a high school education," as those terms are defined by the regulations. R. 25. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability." R. 25. Because Ms. Prevatte's "ability to perform all or substantially all of the requirements of [sedentary] work was impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Ms. Prevatte was capable of

performing. R. 26. That expert testified that there were indeed a significant number of such jobs in the national economy, such as a document preparer, sorter, and addressing clerk. R. 26.

Based on these findings, the ALJ concluded that Ms. Prevatte was not under a disability as defined in the Act, from April 2, 2018, through March 31, 2019, the date of last insured. R. 27. Ms. Prevatte now challenges that decision.

## III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin, Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision "is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.  **Discussion**

Ms. Prevatte argues that "the ALJ's finding that [she] can perform work is not supported by substantial evidence" because "[t]he ALJ failed to find neuropathy and headaches to be severe impairments." Doc. 16 at 9–10. Additionally, Ms. Prevatte argues that "the ALJ fail[ed] to properly consider the medical evidence, including the objective examinations of multiple treating physicians." *Id.* at 11. Finally, Ms. Prevatte argues that "[t]he ALJ's RFC assessment was not supported by a physician's evaluation." *Id.* at 13.

**A. The ALJ's Determination of Severe Impairments**

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual claiming . . . benefits must prove that she is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The governing regulations establish a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for benefits. 20 C.F.R. § 404.1520. The evaluator follows the steps in order. *See id.*

The second step of the sequential disability evaluation requires the ALJ to consider the combined severity of the claimant's medically determinable physical and mental impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment is severe if it significantly limits a claimant's physical or mental abilities to do basic work activities and lasts at least twelve months. *See id.*; 20 C.F.R. § 404.1509. If a claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . , or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find

that [the claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). "The finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, [she] is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r*, 420 F. App'x 901, 902 (11th Cir. 2011). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (stating "all that step two requires" is that the ALJ concluded the claimant "had a severe impairment"). "In this circuit, even if an ALJ errs in failing to indicate that a diagnosed impairment is severe, that error is harmless if the ALJ concludes that the claimant has another severe impairment because 'that finding is all that step two requires.'" *Adams v. Colvin*, No. 2:13-CV-00755-AKK, 2014 WL 287493, at *3 (N.D. Ala. Jan. 24, 2014) (quoting *Heatly*, 382 F. App'x at 825).

Ms. Prevatte argued that "[t]he ALJ failed to find [her] neuropathy to be a severe impairment." Doc. 16 at 11. Ms. Prevatte also argued that "the ALJ failed to consider [her] headaches" and did not mention them in the ALJ's decision. *Id.* at 12. Alternatively, Ms. Prevatte argues that "the ALJ was required to consider" her neuropathy and headaches "in her [residual functional capacity] analysis." *Id.* at 13.

The Commissioner responded that "[s]ubstantial evidence supports the ALJ's step two findings and her assessment of [Ms. Prevatte's residual functional

capacity]." Doc. 19 at 6. Additionally, the Commissioner argued that Ms. Prevatte "failed to meet her burden of proving that she had additional severe impairments or that her impairments, whether severe or not severe, caused additional limitations on her ability to work." *Id.*

According to the Commissioner, Ms. Prevatte "cites no evidence indicating that she had headaches before March 31, 2019, her [date of last insured], that would have affected her ability to work." *Id.* at 7. According to the Commissioner, Ms. Prevatte "failed to show that the ALJ should have found her neuropathy to be a severe impairment and moreover, that her neuropathy created additional work-related limitations not considered by the ALJ." *Id.* at 9.

At step two of the analysis, the ALJ identified Ms. Prevatte's congenital disorder of the lumbar spine as a severe impairment. R. 20–21. Accordingly, the ALJ satisfied step two of the sequential disability analysis, and Ms. Prevatte's argument that the ALJ committed reversable error by failing to classify her neuropathy and headaches as severe impairments fails.

With respect to Ms. Prevatte's headaches, her hearing testimony and the medical evidence cited in her brief do not support her argument that the ALJ erred by failing to mention her headaches or consider them in the residual functional capacity. *See* R. 43–44; Doc. 16 at 11–12.

Ms. Prevatte provided the following hearing testimony regarding her headaches:

> Q      Okay. And then I think you've reported headaches to your doctors previously. Are you still having headaches?
> A      Yes.
> Q      Okay. How often do you have a headache?
> A      I'd say about four times a week.
> Q      Okay. And are they migraine headaches? Or just headaches?
> A      Mostly headaches. Sometimes they will turn into a migraine. I'd say about once every two weeks I'll get a migraine.
> Q      Okay. When you have a migraine, what sort of symptoms do you have?
> A      Dizziness, nausea, can't eat, light sensitivity. Those are actually when I have the migraines.
> Q      Okay. And how long does the migraine last?
> A      Usually about three to six hours.

R. 43–44.

Despite this testimony, Ms. Prevatte does not point to medical records supporting this testimony between the alleged onset date and the date of last insured. In the medical summary of her brief, Ms. Prevatte discusses complaints of headaches *after* the date of last insured. Doc. 16 at 5–6, 7–8 (discussing headaches on January 12, 2021 and August 5, 2019). In the argument section of her brief, Ms. Prevatte discusses additional record evidence regarding headaches, only one of which occurred during the relevant period. *See id.* at 12–13. On June 25, 2018, Ms. Prevatte reported to CRNA Nevills at Flint Hills Pain Management with a chief complaint of

cervical pain. R. 221. In the review of symptoms, Ms. Prevatte reported headaches. R. 222. However, CRNA Nevills did not include headaches in the list of diagnoses, nor do the records indicate Ms. Prevatte received any treatment for headaches. R. 222–23.

The majority of records cited by Ms. Prevatte fall outside the relevant period. *See* R. 224–25 (March 13, 2018); R. 228–29 (January 29, 2018); R. 232–33 (January 9, 2018); R. 236–37 (November 13, 2017); R. 240–41 (November 6, 2017); R. 243–44 (October 25, 2017); R. 246–47 (October 19, 2017); R. 250–51 (October 3, 2017); R. 264–65 (January 13, 2021); R. 544–45 (September 16, 2019); R. 552–53 (August 20, 2019); R. 570–71 (August 5, 2019).

In most of those medical records before Ms. Prevatte's alleged onset date from CRNA Nevills at Fling Hills Pain Management, headaches were never the chief complaint or a diagnosis, but instead a reported symptom. R. 224–26, 228–30, 233–34, 237–38, 241–42, 247–48, 251–52. However, at her October 25, 2017 visit to CRNA Nevills, Ms. Prevatte's headaches were discussed in more detail. R. 243. She reported "[h]eadache after injection." R. 243. The notes from the visit state that Ms. Prevatte "has been complaining of a headache following the injection." R. 245. CRNA Nevills did "not think" the headache was "injection related" and would "follow up." R. 245. Medical records from Ms. Prevatte's next visit do not mention post-injection headaches. *See* R. 240–42.

After Ms. Prevatte's date of last insured, she presented to Dr. Deitrick Cox at OrthoAtlanta where she reported "frequent or severe headaches" as a symptom. R. 545, 553, 571. At those visits, Ms. Prevatte also reported a past medical history of migraines. R. 546, 555, 572. However, Dr. Cox did not include headaches in the discussion of assessment or plan at any of these visits. R. 548, 561, 574–75. Also, after her date of last insured, Ms. Prevatte presented to Dr. Anitra Batie on January 13, 2021 to establish care. R. 262. At that visit, Ms. Prevatte reported headaches as an associated symptom with her neck and back pain, but headaches were not included in the assessment or as a diagnosis. R. 263–66.

Indeed, Ms. Prevatte failed to cite any medical records regarding a diagnosis of headaches by an acceptable medical source, treatment for headaches, or any limitations or impact her headaches had on her ability to work. Ms. Prevatte did not meet her burden of proving her headaches were a severe impairment or that they caused additional work-related limitations not included in the ALJ's assessment of her residual functional capacity.

With respect to her neuropathy, Ms. Prevatte argues that the ALJ erred by failing to find the neuropathy to be a severe impairment based on the medical opinion evidence. Doc. 16 at 11–12. As noted above, this argument fails because the ALJ identified a severe impairment at step two.

Further, the ALJ discussed Ms. Prevatte's neuropathy throughout her residual functional capacity assessment. R. 23–24. The discussion included Ms. Prevatte's subjective complaints and testimony. For example, the ALJ recounted Ms. Prevatte's radiculopathy down her arms and legs, tibial neuropathy, allegations of trouble sleeping due to neuropathy, and inability to drive due to her limbs falling asleep. R. 23. The ALJ also discussed the medical records. For example, the ALJ discussed normal examination results during the relevant period, such as normal strength, normal sensory testing, and normal gait. R. 24; *see also* R. 222, 226, 229–30, 234, 238, 242, 244–45, 247–48, 251–52, 298.

Ms. Prevatte's brief cites medical records before the date of onset, during the relevant period, and after the date of last insured to argue that the ALJ "fail[ed] to properly consider the medical evidence, including the objective examinations of multiple treating physicians." Doc. 16 at 11–12. However, the court will not re-weigh the evidence or substitute its judgment for that of the ALJ.

The ALJ's decision makes clear that she considered Ms. Prevatte's "history of lumbosacral and cervical spine pain," "radiculopathy down her arms and legs," and "tibial neuropathy." R. 23. The ALJ acknowledged Ms. Prevatte's need for pain management, R. 23, and discussed in detail the relevant examination results. R. 23–24. Ms. Prevatte did not meet her burden of proving her neuropathy was a severe

impairment or that it caused additional work-related limitations not included in the ALJ's assessment of her residual functional capacity.

## B. Lack of SSA-Directed Consultative Examination

"An individual claiming . . . benefits must prove that she is disabled." *Moore*, 405 F.3d at 1211. The burden is on the claimant to introduce evidence in support of her application for benefits. *Ellison*, 355 F.3d at 1276. The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1517; *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Ms. Prevatte argues that "[t]he ALJ was required to order a consultative examination or seek other guidance from a qualified medical professional in assessing" her residual functional capacity. Doc. 16 at 14. Ms. Prevatte notes that the state agency medical consultants "found there was insufficient evidence in the record" to make a residual functional capacity determination. *Id.* The Commissioner

15

argues that Ms. Prevatte "failed to show that the record contains evidentiary gaps that resulted in unfairness or clear prejudice, and she failed to show that ordering a consultative examination was necessary for the ALJ to make an informed decision." Doc. 19 at 11.

Although Ms. Prevatte argues that a consultative examination was necessary to develop her residual functional capacity, the ALJ's decision demonstrates otherwise. The ALJ discussed Ms. Prevatte's medical history, R. 23; "[p]hysical and objective examination findings" from April 2018, May 2018, June 2018, July 2018, August 2018, September 2018, October 2018, and December 2018, R. 23–24; and examination and imaging findings after the date of last insured. R. 24. Based on this evidence, the ALJ limited Ms. Prevatte to sedentary work with additional limitations. R. 22.

Ms. Prevatte has not identified any evidentiary gaps in the ALJ's decision. Instead, she points to the state agency medical consultants' findings at initial determination and reconsideration. Doc. 16 at 14. Contrary to Ms. Prevatte's argument, the state agency medical consultants had sufficient information to identify Ms. Prevatte's medically determinable impairments and their severity. *See* R. 55, 60. At the initial determination level, the state agency medical consultant wrote: "The [claimant] failed to return the necessary information to further develop the claim. Therefore, there is insufficient evidence to rate claim prior to" the date of last

insured. R. 55. At reconsideration, this finding was reaffirmed without explanation. R. 59. The ALJ acknowledged the state agency medical consultants' opinions in her discussion of Ms. Prevatte's residual functional capacity. R. 24.

The record here was neither incomplete nor inadequate as it related to Ms. Prevatte's physical impairments. Instead, the record was sufficient for the ALJ to evaluate Ms. Prevatte's impairments and craft a residual functional capacity that incorporated her abilities. Substantial evidence supports the ALJ's consideration of Ms. Prevatte's impairments, and Ms. Prevatte has failed to establish that the ALJ had any obligation to further develop the record.

## V.     Conclusion

The ALJ's determination that Ms. Prevatte is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 7th day of March, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE